**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: _____

ALUMNI CRUISES, LLC d/b/a
AUTISM ON THE SEAS,

      Plaintiff,

vs.

CARNIVAL CORPORATION,

      Defendant.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff, ALUMNI CRUISES, LLC d/b/a AUTISM ON THE SEAS (hereinafter "Plaintiff"), by and through undersigned counsel, sues Defendant, CARNIVAL CORPORATION (hereinafter "Defendant"), for injunctive and other relief pursuant to 42 U.S.C. §12181, *et. seq.* (hereinafter "THE AMERICANS WITH DISABILITIES ACT" or "ADA") and alleges:

**JURISDICTION AND VENUE**

1. This is an action for declaratory and injunctive relief and for damages brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, *et. seq.* This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. §1331 and §1343.

2. Venue lies in this Court pursuant to 28 U.S.C. §1391 and Rule 3.1 of the Local Rules of the United States District Court for the Southern District of Florida, in that Carnival's Global headquarters are located in Miami-Dade County, Florida.

1

## THE PARTIES

3. Alumni Cruises, LLC d/b/a Autism on the Seas ("AOTS") is a Connecticut corporation. AOTS is a "Developmental Disability Cruise Service Provider" which works with multiple cruise lines in order to provide vacation opportunities for developmentally disabled adults and families of children living with Autism, Down Syndrome, Cerebral Palsy, Asperger Syndrome, and other cognitive, intellectual and developmental disabilities. Through its services, AOTS provides developmentally disabled adults and families of developmentally disabled children with the opportunity to enjoy vacations that are readily and easily accessible to individuals without disabilities; specifically, the ability to enjoy cruises and to travel. AOTS has to date provided (at its own expense) comprehensive staffing specifically trained to meet the needs of developmentally disabled children and others on each and every cruise ship. Without these personnel, it would not be possible for individuals with developmental disabilities to have access to cruise services.

4. The Director of Group Development for AOTS is Jamie Grover. Mr. Grover was formerly the program coordinator for the University Center for Developmental Disabilities at California State University at San Bernardino. Mr. Grover hand-picks and screens staff to participate in each AOTS cruise. Most staff members are typically students working on advanced degrees relating to some form of child development, and have appropriate experience working with children and adults with developmental disabilities, ranging the entire spectrum of such disabilities. Most of the AOTS staff have worked with AOTS in the past, and are experienced in handling the needs of the developmentally disabled on cruise ships. AOTS would respectfully

refer the Court to its website (www.autismontheseas.com) for a more complete explanation of the work done by AOTS in an effort to provide full, fair and equal access to cruise ships for the developmentally disabled.

5. At all times material hereto, Defendant, CARNIVAL CORPORATION ("Carnival"), was and is a cruise ship operator with its headquarters in Doral, Florida.

6. Currently, AOTS has a number of Carnival cruises planned for the developmentally disabled during the remainder of 2012 and into 2013. Specifically, the following Carnival cruises are currently scheduled:

| **Carnival Ship** | **Date** | **Cruise Type** |
|---|---|---|
| Splendor | 07/15/2012 | 7 nights from Los Angeles to various Mexico destinations |
| Triumph | 12/31/2012 | 5 nights from Galveston, Texas to various Mexico destinations |
| Magic | 03/10/2013 | 7 nights from Galveston, Texas to Key West and the Caribbean |
| Glory | 05/26/2013 | 5 nights from Norfolk, Virginia to the Bahamas |
| Inspiration | 08/23/2013 | 3 nights from Long Beach, California to Mexico |
| Inspiration | 08/26/2013 | 4 nights from Long Beach, California to Mexico |
| Splendor | 11/25/2013 | 8 Nights from New York to Florida and the Bahamas |

7. Prior to institution of this litigation, Plaintiff entered into negotiations with Carnival relating to the provision of fair and equal access to cruises for the developmentally disabled. Specifically, even though AOTS has assumed the financial burden and responsibility for providing the specialized staff and accommodations required to give access to developmentally disabled children and adults (an expense which Carnival is required to pay as part of its obligation to provide fair and equal access), Carnival has been unwilling to subsidize even the lodging expense of that staff. Accordingly, even

3

though AOTS has taken upon itself a responsibility imposed on Carnival by Federal law (accommodations necessary to provide equal access to the developmentally disabled), Carnival has nevertheless insisted on further violating the Americans with Disabilities Act ("ADA") by refusing to even assist AOTS in providing equal access to Carnival's own cruise ships.

## COUNT I
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

8. Plaintiff re-avers and re-alleges the allegations set forth in Paragraphs 1 through 7 above, as though fully set forth herein.

9. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. §12181, *et seq.*

10. Congress specifically found, *inter alia*, that:[1]

    (i) Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    (ii) Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    (iii) Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

---

[1] 42 U.S.C. §12101(a)(1) - (3), (5), and (9).

  (iv) Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and,

  (v) The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

11. Congress explicitly set forth the purpose of the ADA; to wit:[2]

  (i) Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

  (ii) Provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

  (iii) Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

---

[2] 42 U.S.C. §12101(b)(1)(2) and (4).

12. The congressional legislation gave businesses a time period of up to one and a half years from the enactment of the ADA to implement the requirements imposed by the ADA. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).[3]

13. Carnival falls within the definition of public accommodations covered by the Americans with Disabilities Act.

14. Carnival is legally required to be, but is not in compliance with the ADA.

15. The ADA violations at issue, which are applicable to developmentally disabled individuals include but are not limited to the following:

   I. **DAYCARE:**

   A daycare program is provided for all guests 12 years of age and younger. Guests 12 years old and younger are cared for from approximately 9:00AM until 10:00PM in Carnival daycare, without parents or guardians present. The Carnival day care program is required by law to be appropriate for children 12 and under with developmental disabilities, but it is not capable of handling developmentally disabled children for the following reasons:

   a. Safety Monitoring: Developmentally disabled children must be monitored and kept within sight *at all times* to ensure that they are kept away from any unsafe act which might cause harm to themselves or others, given their reduced cognitive age which varies for each developmentally disabled child. Carnival daycare does not have a sufficient number of staff in order to at

---

[3] 42 U.S.C. §12181; 28 C.F.R. §36.508(a).

6

all times monitor each developmentally disabled child. Carnival staff ratio per child differs on each cruise, and can be as low as 1 staff member for every 100 children (a ratio unacceptable per every US state law, and certainly unacceptable for care of special needs children).

b. Safety and Medical Issues or Emergencies: Carnival daycare must but does not have staff trained, or sufficient number of staff, to effectively identify medical emergencies or common bodily dysfunctions of developmentally disabled children. Carnival Staff ratio per child differs on each cruise, and can be as low as 1 staff member for every 100 children.

c. Symptom Management: Carnival daycare must but does not have staff trained, or sufficient number of staff, to prevent and handle common symptoms associated with Autism. Carnival Staff ratio per child differs on each cruise, and can be as low as 1 staff member for every 100 children.

d. Behavioral Recognition: Carnival daycare must, but does not have staff trained, or sufficient number of staff, to recognize behavioral traits and symptoms that are signs of an imminent behavioral problem which will create unsafe conditions. Carnival Staff ratio per child differs on each cruise, and can be as low as 1 staff member for every 100 children.

e. Bathroom assistance: Carnival daycare must but does not have sufficient number of staff to allow for two staff members to

accompany each developmentally disabled child to the restroom for purposes of assisting and observing the process. Carnival Staff ratio per child differs on each cruise, and can be as low as 1 staff member for every 100 children.

f. Bathroom Maintenance: Carnival daycare must but does not have sufficient number of staff members such that two staff members are available to accompany each developmentally disabled child to the restroom in order to have sufficient personnel to both assist the child and to clean-up any unsanitary condition created by a child with developmental disabilities. Carnival Staff ratio per child differs on each cruise, and can be as high as 1 staff member for every 100 children.

g. Youth Evacuation Emergency: Staff members must be able to communicate and direct children to their Muster Stations during an Emergency Evacuation. Many developmentally disabled guests require specially trained staff (as well as dedicated staff) to be able to communicate and motivate them effectively enough to be directed to go somewhere they are being forced to go. Without the properly trained staff, and the effective <u>number of staff</u>, all children (not just the disabled) and staff could be at risk during an emergency evacuation, as it requires special skill and in some cases, <u>physical</u> maneuvering, to direct some mentally impaired guests against their will, in a timely manner. Even a ratio of 1 to 10 in these cases could be extremely

problematic. Also, the loud sirens/horns and commotion will exasperate the disability behaviors and make the task even more challenging.

Reasonable Accommodation: a reasonable accommodation necessary to provide children with developmental disabilities under the age of 12 with fair and equal access to Carnival daycare includes the hiring of a sufficient number of properly trained and skilled staff. Such staff must be available on sequential shifts, at all times when Carnival daycare is open to children.[4]

II. **TEEN CLUB, GUESTS ages 13-17:**

A teen program is provided for all guests ages 13-17. Guests ages 13-17 are provided a club room with partial organized activities that are non-supervised from approximately 9:00AM until 10:00PM, where parents or guardians are not permitted. The Carnival teen club program is required by law to be appropriate for teens aged 13-17 with developmental disabilities, but it is not capable of handling developmentally disabled children for the following reasons:

Social Issues/Bullying: Developmentally disabled teens have a lower cognitive level than typical guests, which put them at risk of social interaction issues and possible bullying with their typical developing teen peers, especially in an un-supervised and un-monitored environment.

Safety Concerns: Developmentally disabled teens must be monitored and kept within sight *at all times* to ensure that they are kept away from any

---

[4] These are services which have to date been provided by AOTS on Carnival cruises at its own expense, notwithstanding that the ADA requires that Carnival provide these services.

9

>unsafe act which might cause harm to themselves or others. Carnival teen program does not have sufficient staff in order to at all times monitor each developmentally disabled teen.

Reasonable Accommodation: a reasonable accommodation necessary to provide teens with developmental disabilities ages 13-17 with fair and equal access to Carnival teen club activities and services includes the hiring of a sufficient number of properly trained and skilled staff to provide similar services and activities, in a similar environment. Acceptable similar environments can include an alternate venue or same teen club venue. Such staff must be available on sequential shifts, at all times when Carnival teen club is open to teens.[5]

>III. **PORT CHECK-IN:**
>
>Guests with developmental disabilities are not capable of waiting in one place for an extended period of time, with two to five minutes generally being the maximum possible time period. Because there is no accommodation made for this fact, guests with developmentally disabilities tend to manifest their disability characteristics in public, often producing public embarrassment for the family, which will often exacerbate the behavior of the developmentally disabled guest. Neither the regular check-in lines nor the disabled accessible check-in lines accommodate disabilities requiring expedited check-in times.

Reasonable Accommodation: Families of developmentally disabled individuals should be permitted to either check-in via an expedited check-in counter or by an expedited process designed for families with a developmentally disabled guest, and position trained staff members

---

[5] These are services which have to date been provided by AOTS on Carnival cruises at its own expense, notwithstanding that the ADA requires that Carnival provide these services.

at the check-in and embarkation waiting areas in order to greet and assist developmentally disabled passengers while waiting for ship embarkation (after check-in).

    IV.    **MUSTER DRILL:**

    Developmentally disabled guests are often unable to remain in a waiting area for a period of time longer than two to five minutes. Forced to do so, such guests may display characteristics of their disability, which leads to a public embarrassment and extreme stress on the family, resulting in further stress on the disabled individual. Disability characteristics manifest themselves in small or confined spaces, and as a result of loud and sudden noises.

Reasonable Accommodation: Provide a designated muster drill area for individuals with developmental disabilities and their families, with an amended process for communicating drill information. Provide trained staff to assist in the specially designated muster drill area in order to help with handling and care of guests with special needs, and provide headsets for individuals with special needs who are affected by drill alarms.

    V.    **DINING ROOM**

    Guest with developmental disabilities are not capable of waiting in a single area for more than two to five minutes at a time, or of being present in a small or confined area for any amount of time. Guests with disabilities have varying degrees of special diets and food allergies. Main dining areas have very tight spaces between tables and have difficulty in accommodating guest in need of a faster service time.

Reasonable Accommodation: Position tables for developmentally disabled guests against walls that have windows, in order to allow guests to access the windows and occupy their time while waiting for service, without disrupting other cruise guests. Provide for expedited food

service for families with developmentally disabled children, keeping in place the overall process, but expediting so that it lasts for no more than forty-five (45) minutes. Provide skilled staff to assist families during dinner and to attend disabled guests when needed and when disability characteristics manifest.

### VI. IN-CABIN BABYSITTING

Carnival provides its guests with the ability to use in-cabin babysitting on a first-come-first-served basis. Children with developmental disabilities require babysitters with specialized skills and training.

Reasonable Accommodation: Provide babysitters who are properly qualified to supervise and care for children with developmental disabilities.

### VII. USE OF VENUES

Carnival provides water slides, water parks, mini-golf, basketball courts, dance clubs, and other venue amenities to guests. Developmentally disabled guests are not capable of waiting in a single area for more than two to five minutes at a time without disability characteristics manifesting.

Reasonable Accommodation: Provide specified times when these venues are reserved for developmentally disabled guests and provide for skilled staff to accompany and assist guests in these venues.

### VIII. PHOTO OPPORTUNITIES

Guests are provided with the daily opportunity to have their pictures taken by ship photographers with various backdrops. Developmentally disabled guests are generally, not capable of waiting in a single area for more than two to five minutes at a time without disability characteristics manifesting.

<u>Reasonable Accommodation</u>: Provide private opportunities for developmentally disabled guests to have their picture taken at a specified time each day, or at least 50% of the number of the nights of the cruise, and provide staff to assist families and to attend to the guests in the event that disability characteristics manifest themselves during photo opportunities.

IX. **<u>TENDER</u>**

A small ferry system is provided to shuttle guests from ship to port and from port to ship. Developmentally disabled guests are not capable of waiting in a single area for more than two to five minutes at a time without disability characteristics manifesting. The process for boarding the tenders is not expedited for persons with special needs; the tenders are not designed to allow roaming on-board and do not contain spaces large enough to ensure that there will not be a manifestation of disability characteristics.

<u>Reasonable Accommodation</u>: Provide a specific time of day when families with developmentally disabled children can board an otherwise empty tender and provide such families with a designated space large enough for each child to have sufficient room to move. Provide trained staff to accompany families on the tender to attend to the guests and to assist as needed when disability characteristics manifest themselves. Provide staff trained to be able to accompany such guests when in port and to return with them on the tender for assistance.

X. **<u>PORT EXCURSIONS</u>**

Guests are able to take port excursions in order to visit the port where the cruise ship has docked. These can be a complex and all-encompassing task requiring personalized assistance for developmentally disabled guests throughout the excursion.

<u>Reasonable Accommodation</u>: Provide a properly trained staff member to accompany developmentally disabled persons upon request.

XI. **DISEMBARKATION**

Guests are required to wait in specified areas until their group is called to depart the ship and then wait in lines to depart from the ship to the port building. Developmentally disabled guests are not generally capable of waiting in a single area for more than two to five minutes at a time without disability characteristics manifesting. The regular process for disembarkation does not provide the flexibility and expedited services necessary in order to accommodate persons with disabilities

<u>Reasonable Accommodation</u>: Families of developmentally disabled individuals should be permitted to disembark by an expedited disembarkation process to be designed by Carnival in compliance with all applicable laws and regulations applicable to the disembarkation process.

XII. **PUBLICATION OF SERVICES**

Carnival does not in any way make known its full ability to accommodate guests with developmental disabilities or the availability of services (like AOTS) which allow individuals with developmental disabilities to participate in the cruise services offered to all guests.

<u>Reasonable Accommodation</u>: Publicize availability of services and facilities that provide fair and equal access to developmentally disabled persons on each Carnival cruise, as long as guests inform Carnival Corporation, or as long guests inform an affiliated "Developmental Disability Cruise Service Provider" 60 days prior to the cruise.

16. As a result of its failure to comply with the mandates of the ADA, Carnival has discriminated against developmentally disabled travelers, by denying access to, and

14

full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the various Carnival ships. Defendant's discrimination is specifically prohibited by 42 U.S.C. §12182, *et seq.*

17. Carnival will continue to discriminate unless and until it is compelled by this Court remove all of the barriers to access upon its cruise ships, and to institute reasonable accommodations for individuals with developmental disabilities, including but not limited to those specifically set forth herein, and to make all of its ships/cruise services fully accessible to, and usable by guests with developmental disabilities and their families.

18. During the course of this case, AOTS intends to have an accessibility expert conduct an inspection of all applicable cruise ships pursuant to Federal Rule of Civil Procedure 34, so as to identify each and every ADA violation present upon such cruise ships which affects individuals with developmental disabilities.

19. Unless and until Defendant is ordered and compelled to come into compliance with the ADA, AOTS and individuals with developmental disabilities will be harmed by Carnival into the future.

20. The removal of all or most barriers to access and ADA violations present upon Carnival ships is readily achievable and can be accomplished and carried out without unreasonable difficulty or expense, given the size and revenues of Carnival.

21. There is no adequate remedy at law to rectify this situation, and AOTS and its guests are suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm unless and until Carnival is required to institute the reasonable accommodations set forth herein.

22. This Court is vested with authority to grant injunctive relief sought herein, including entry of an order requiring alteration and modification of the subject cruise ships, hiring and retention of appropriately trained and capable staff members, and all such changes to policies and procedure necessary to comply with the ADA.

23. AOTS has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorney's fees, costs, and litigation expenses, all of which are recoverable from Carnival.[6]

**WHEREFORE,** Plaintiff, Autism on the Seas, respectfully requests that this Court enter an order granting permanent injunctive relief, enjoining Carnival from continuing its discriminatory practices, ordering Carnival to remove physical barriers to access/services and alter its subject ships, policies, practices, and procedures so as to make all ships readily accessible to and usable by individuals with developmental disabilities, and awarding Plaintiff all of its reasonable attorney's fees, litigation expenses and costs.

## COUNT II
## UNJUST ENRICHMENT

24. Plaintiff re-avers and re-incorporates the allegations set forth in Paragraphs 1 through 7 above, as though fully set forth herein.

25. As noted in detail above, Carnival is required to provide equal access for developmentally disabled cruise ship guests. However, Carnival is not providing equal access, in violation of the ADA and other Federal law.

26. As a result of Carnival's failure to comply with the ADA, AOTS has filled the void left by Carnival's failures, and has itself undertaken the great expense and difficulty of providing appropriately trained and skilled staff, and other accommodations, so as

---

[6] 42 U.S.C. §12205, 12117.

to make Carnival cruise ships accessible to the developmentally disabled, as required by the ADA.

27. In creating ADA compliance on Carnival cruise ships, AOTS has conferred a benefit on Carnival, which would otherwise be in gross and blatant violation of the ADA with regard to developmentally disabled guests who participate in cruises organized through AOTS.

28. Carnival has knowledge that AOTS has been providing and is providing this benefit. Carnival is acutely aware that AOTS has itself borne all expense necessary to create fair and equal access for developmentally disabled guests on Carnival cruise ships, including but not limited to providing skilled and trained staff so that developmentally disabled children can attend daycare, and so that babysitting services are available for parents of developmentally disabled children in the same way that those services are available for children without disabilities. Unless and until this Court enters the injunction requested within Count I of this complaint, AOTS will be forced to continue satisfying Carnival's legal obligation to provide equal access (which Carnival has refused to do voluntarily).

29. Under the circumstances presented, it would be unjust, and Carnival would be unjustly enriched, if it were to be able to keep and hold the financial benefit gained by forcing AOTS to comply with Carnival's legal obligations. Accordingly, Carnival must be required to repay AOTS for all expense incurred in making past Carnival cruises accessible to the developmentally disabled, as well as all expenses to be incurred in the future in that regard (until such time as this Court enters an injunction requiring that Carnival comply with its legal obligations, and to provide those services at its own expense).

**WHEREFORE**, for the foregoing reasons, Plaintiff, Alumni Cruises, LLC d/b/a Autism on the Seas, respectfully requests that this Court enter judgment on its favor, awarding it all monies previously expended on staff and amenities necessary to create equal access for the developmentally disabled on Carnival cruise ships, as well as all funds to be expended in that regard through the date of judgment, and awarding all such other relief as this Court deems just and equitable under the circumstances.

Dated this 28th day of June, 2012.

Respectfully Submitted,

**LAW OFFICES OF NOLAN KLEIN, P.A.**
Attorneys for Plaintiff
Harrison Executive Centre
1930 Harrison St., Ste. 502
Hollywood, FL 33020
(954) 372-0985
(305) 397-1924 FAX

By: s/ Nolan Klein
NOLAN KLEIN
Florida Bar No. 647977